IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Sheila M. Tant, | ) | Civil Action No. 8:14-cv-04632-DCN-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and Section 205(g) of the Social Security Act to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and disabled widow's insurance benefits ("DWIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On January 29, 2013, Plaintiff filed applications for DIB and DWIB, alleging disability beginning July 31, 2012.  [R. 203–17.]  The claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration").  [R. 114–21,

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

126–37.]  Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on May 8, 2014, ALJ Edward T. Morriss conducted a hearing on Plaintiff's claims.  [R. 31–52.]

On June 12, 2014, the ALJ issued his decision finding Plaintiff not disabled for DIB or DWIB.  [R. 17–26.]  At Step 1[2], the ALJ found Plaintiff meets the insured status requirements of the Social Security Act ("the Act") through December 31, 2017; met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Act; and had not engaged in substantial gainful activity since July 31, 2012, the alleged onset date.  [R. 19, Findings 1, 2 & 4.]

At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine.  [R. 20, Finding 5.]  The ALJ also found Plaintiff had the non-severe impairment of anxiety.  [*Id*.]

At Step 3, the ALJ determined Plaintiff's impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments.  [R. 20, Finding 6.]  The ALJ specifically considered Listing 1.04 related to disorders of the spine. [*Id*.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently.

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> She can sit for 6 hours in an 8-hour day, and stand and/or walk for 6 hours in an 8-hour day, with normal breaks. The claimant can only occasionally climb ramps and stairs and crouch. She can frequently balance, stoop, kneel and crawl. Additionally, she can never climb ladders, ropes or scaffolds. The claimant can only occasionally reach overhead with the bilateral upper extremities.

[R. 21, Finding 7.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was able to perform her past relevant work as a registrar. [R. 26, Finding 8.] Thus, the ALJ found Plaintiff had not been under a disability, as defined by the Act, from July 31, 2012, through June 12, 2014, the date of the decision; nor was she entitled to DWIB based on her January 29, 2013, application. [R. 26.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which denied review on October 24, 2014. [R. 1–6.] Plaintiff commenced an action for judicial review in this Court on December 6, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains legal errors warranting the reversal and remand of the case. [*See* Doc. 13.] Specifically, Plaintiff contends the ALJ improperly disregarded the opinion of Plaintiff's treating orthopedic surgeon Dr. Shaleish Patel ("Dr. Patel") in determining her RFC. [*Id.* at 4–9.] Plaintiff also argues the ALJ improperly gave more weight to the opinion of a non-treating state agency physician although there was no evidence of record from a treating or examining physician that was inconsistent with the opinion of Dr. Patel. [*Id.* at 9–12.]

The Commissioner contends the ALJ's decision should be affirmed because there is substantial evidence of record that Plaintiff was not disabled within the meaning of the Act. [*See* Doc. 16.] Specifically, the Commissioner contends the ALJ properly assigned

little weight to Dr. Patel's opinion as his treatment notes failed to include evidence that would support deficits in Plaintiff's upper and lower extremity strength and his findings were inconsistent with Plaintiff's activities of daily living. [*Id*. at 7–10.] Additionally, the Commissioner contends the ALJ properly found Dr. Patel's opinion was contradicted by the state agency physician opinion, and thus, the ALJ was not required to fully credit Dr. Patel's opinion. [*Id*. at 10–12.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th

4

Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court

5

must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See*

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699

8

F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical

9

and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").   If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

## C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

## D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v.*

13

*Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

**IV.    Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

**V.    Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

14

claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and

West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:

...

**FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Treating Physician's Opinion**

Plaintiff takes issue with the ALJ's rejection of Dr. Patel's RFC assessment of the nature and severity of Plaintiff's impairment on her ability to work. [Doc. 13 at 6.] Plaintiff argues that whether a physician is a specialist is a factor that should have been considered in weighing Dr. Patel's opinion, as well as his treatment relationship with Plaintiff. [*Id.* at 8.] Plaintiff contends the ALJ disregarded the provision of 20 CFR § 404.1527 in evaluating Dr. Patel's opinion. The Commissioner argues the decision of the Commissioner should be affirmed. The Court agrees with Plaintiff.

### *Summary of Relevant Medical Evidence*

On February 1, 2012, Plaintiff underwent a routine MRI of the cervical spine for comparison to an MRI from April 9, 2007, with respect to Plaintiff's complaint of neck pain and radiculopathy and her history of a prior cervical fusion in 2009. [R. 385.] Dr. James Thesing ("Dr. Thesing") noted the following:

1.   Mild central canal stenosis at C4-C5 with moderate biforaminal stenosis right greater than left, similar.

2.   Interval ACDF at C5-C6 and C6-C7 with improved patency of the central canal at both levels, mildly stenotic currently.  Moderate to severe bilateral C6 and C7 neural foraminal stenoses are present, similar.

3.   Mild bilateral C8 neural foraminal stenosis.

[R. 385.]

On February 16, 2012, Plaintiff saw Dr. Don O. Stovall ("Dr. Stovall") of LowCountry Orthopaedics and Sports Medicine on consultation for her neck pain at the request of Plaintiff's primary care physician Dr. Suzanne Weathers ("Dr. Weathers").  [R. 386.]  Dr. Stovall noted that Plaintiff complained of mild to moderate aching pain at the posterior aspect of her cervical spine with some radiation of pain into the interscapular region and to the shoulders and occasional numbness and tingling in her hands.  [*Id.*] Dr. Stovall noted that Plaintiff had sustained an injury to her neck in 2007 and was treated conservatively by Dr. Patel, also with LowCountry Orthopaedics and Sports Medicine, and eventually underwent a cervical fusion by Dr. Tyler.  [R. 387.]  Of significant note, Dr. Stovall noted that Plaintiff also had bilateral carpal tunnel surgery in the past. [*Id.*]

On inspection of Plaintiff's cervical spine, Dr. Stovall noted that Plaintiff demonstrated fairly good range of motion of the neck with some pain on the extremes of motion.  [*Id.*]  Inspection of her upper extremity revealed stable joints with fairly good range of motion of the shoulders, elbows and wrists without pain and no focal motor deficits.  [*Id.*] The MRI scan of the cervical spine revealed the previous fusion from C5-C7 with no evidence of loosening.   [*Id.*]  Some mild posterior degenerative changes at C4-C5 with a posterior disc ostheophyte complex was noted with mild stenosis at that level.  [*Id.*]  There

was some spondylosis and disc bulging in the upper thoracic region as well. [*Id.*] Dr. Stovall discussed conservative treatment with Plaintiff, including an epidural injection; Plaintiff did not appear to be ready for surgical intervention. [R. 387–88.] On March 1, 2012, Dr. Patel performed a left C7-T1 cervical translaminar epidural injection on Plaintiff. [R. 390.]

On April 5, 2012, Plaintiff returned to Dr. Stovall on follow up from her cervical epidural injection for cervical radiculopathy. [R. 391.] Plaintiff reported that she had relief from her symptoms for about a week before recurrence. [*Id.*] Plaintiff complained of continued neck pain, headaches, and pain in her upper arm with some numbness and tingling in her fingers. [*Id.*] Dr. Stovall recommended an EMG and nerve conduction study of both upper extremities before considering further treatment options. [*Id.*]

On August 1, 2012, Plaintiff saw Dr. Patel on follow up in regard to her bilateral upper extremity parathesias. [R. 392.] Plaintiff continued to complain of a moderate amount of pain in the neck with radiation into both upper extremities, as well as in between her shoulder blades. [*Id.*] Dr. Patel also noted a history of a prior cervical surgery with Dr. Tyler in 2009 and a lumbar surgery in 1997 with Dr. Don Johnson ("Dr. Johnson"). On physical exam, Plaintiff had moderate tenderness to palpation in the lower lumbar and cervical paraspinals with range of motion in the C-spine and L-spine within normal limits. [*Id.*] On neurologic exam, Plaintiff had decreased to light touch in the right lateral foot; lower extremity special testing was positive for sitting straight leg raise on the right; sensory exam was decreased to light touch in the thumbs of both hands; and motor exam was grossly 5/5. [R. 392–93.] Dr. Patel also noted that EMG/nerve conduction studies

19

performed that day were within normal limits.  [R. 393–94.]  Dr. Patel noted the following

impressions:

1.  Normal

2.  The electrodiagnostic and nerve conduction studies do not reveal evidence
    of any other generalized peripheral neuropathy, or focal nerve entrapment,
    or cervical radiculopathy in either upper limb.

3.  Of note, EMG does not evaluate small sensory pain fibers.  Thus, a lack of
    active denervation does NOT exclude an active radiculopathy.

4.  Clinical correlation is needed to determine the signficiance of todays infidngs
    on EMG and NCS.

[R. 395.]

Dr. Patel noted that Plaintiff continued to have a moderate amount of paresthesias

into the arms despite having recent cervical fusion and that a spinal cord stimulator may

be an option.  [R. 393.]  Dr. Patel also ordered MRIs of the lumbar spine with and without

contrast to further evaluate the paresthesias down the right leg.  [*Id.*]  Dr. Patel noted that

Plaintiff was also still having some difficulty tolerating her pain medications and discussed

having her try the Butrans patch for a week or consider switching to Nucynta.  [*Id.*]

On August 10, 2012, Plaintiff underwent an MRI Lumbar Spine with and without

contrast to obtain a multi-planar multi-sequence MR image of the lumbar spine.  [R. 400.]

The following findings were made by Dr. Michael Garovich ("Dr. Garovich"):

1.  Postop spine status post fusion laminectomy at L5-S1
2.  Mild central stenosis L4-5.  Borderline to mild central stenosis L3-4
3.  Multilevel facet arthropathy
4.  Small central disk protrusion L4-5

[R. 401.]

On August 20, 2012, Plaintiff returned to Dr. Patel with low back and bilateral leg pain which had become more pronounced in the past three weeks.[6]  [R. 402.]  Plaintiff complained that her pain radiated into her bilateral legs but stopped above the knee; that she had numbness and tingling in the posterior aspects of her legs with sitting; and that her pain was increasing with sitting.  [*Id.*]  Plaintiff indicated she was unable to get her Butrans patch as previously prescribed due to cost issues.  She explained that her symptoms are aggravated by sitting and walking and that they are alleviated by sitting on her heating pad with her legs pulled towards her. [*Id.*] On sensory exam, Plaintiff was decreased to light touch on the right lateral ankle and calf.  [*Id.*] With respect to the lumbar spine, Plaintiff showed moderate tenderness to palpation of the lower lumbar paraspinals; moderate tenderness to palpation of the left SI joint; decreased range of motion in the lumbar spine; positive seated straight leg raises bilaterally; and unobtainable FABER signs.  [*Id.*] Upon examination, and after reviewing Plaintiff's MRI, Dr. Patel recommended scheduling Plaintiff for a bilateral SNRB at the level of L4-L5.  [R. 403.]  Dr. Patel also discussed the possibility of scheduling Plaintiff for a left-sided S1 joint injection at her follow up exam. [*Id.*]

On September 6, 2012, Plaintiff returned to Dr. Patel for a bilateral L4-5 transforaminal epidural steroid injection.  [R. 406.]  Plaintiff returned to Dr. Patel on follow up on September 19, 2012, with complaints of moderate to severe pain in her lower back radiating bilaterally to her ankles, calves, feet, and thighs.  [R. 408.] Plaintiff advised that

---

[6]While the treatment notes are on letter head from Dr. Shailesh M. Patel, the notes indicate that Plaintiff's treatment plan was discussed with Dr. Patel who concurred with the plan. [R. 402–03.] Thus, it is unclear which doctor Plaintiff saw on this date; only that Dr. Patel concurred in the course of treatment after the visit.

she received some relief post injection but it only lasted a few days. [*Id*.]  Plaintiff also complained of some associated nausea and drowsiness from the oxycodone.  [*Id*.] On physical exam, Plaintiff's gait was antalgic; her lower extremity and paraspinous muscle tone was normal; spasms were moderate; she had tenderness to palpation in the spinous, paraspinous, lumbar and SI joint; she had an active painful range of motion with limiting pain factors in the lumbar spine; bilateral lower extremity strength was normal; and lower extremity neurovascular was normal except for sensory was decreased to light touch in the right medial and lateral ankle and medial calf.  [R. 409.]

Plaintiff returned to Dr. Patel on October 18, 2012, for a right SI joint injection with anesthesia for her back pain. [R. 413.] On November 2, 2012, Plaintiff returned to LowCountry Orthopaedics on follow up for her lumbar spine pain reporting severe pain in her lower back radiating bilaterally to her ankles, calves, feet and thighs; she did not report any numbness, tingling or burning. [R. 414.]  Plaintiff indicated the injection provided no relief.  [*Id*.] Plaintiff also reported that she was drowsy from the medication and very constipated; she also developed a rash on her upper body and buttock which caused her to stop taking the medication for the past 5-6 days.  [*Id*.]  An order for a caudal injection was placed.  [*Id*.] Plaintiff's history, physical exam findings, diagnosis and recommended treatment were discussed with Dr. Patel who agreed with the plan.

On her follow up visit to Dr. Patel on December 27, 2012, Plaintiff continued to complain of a moderate amount of pain in her back and was tearful.  [R. 419.]  Another caudal injection was ordered as the previous injection was not completed due to Plaintiff having kidney stones and a fever.  [*Id*.]   Dr. Patel noted that Plaintiff could return to work on modified duty if available. [R. 422.]

On February 21, 2013, Dr. Weathers completed a questionnaire indicating as follows:

* Plaintiff's most recent date of treatment was December 2012
* Plaintiff's mental diagnosis was anxiety; psychiatric care has not been recommended
* Plaintiff is oriented as to time; thought process intact; thought content appropriate; mood/affect normal; attention/concentration good; memory good
* Mental condition poses no work limitations
* Plaintiff is capable of handling her own funds

[R. 427.]

Plaintiff returned to Dr. Patel on April 10, 2013, with moderate but worsening pain in the lower back and legs radiating to the back, right ankle, right calf, right foot and right thigh. [R. 432.] Plaintiff indicated she was out of medication for about two weeks and that she had recently lost her job and had no insurance; thus, she could not afford injections. [*Id*.] On exam, Plaintiff's gait was antalgic with a limp; lower extremity muscle tone was normal; paraspinous tone was normal; lumbar spasms were severe; and Plaintiff had max tenderness to palpation in the spinous, paraspinous, lumbar and SI joint. [*Id*.] Facet loading was positive bilaterally and Faber's, Gaenslen's and Sanding Stork tests[7] were positive on both sides. [*Id*.] Plaintiff was having difficulty walking, dizziness, and headache and was experiencing anxiety and depression as well. [R. 434.]

On April 17, 2013, Dr. Patel completed an *Attending Physician's Statement* on Plaintiff's behalf indicating as follows:

* Plaintiff's most reasonable lifting and/or carrying expectation during a normal work day is 10 pounds occasionally (as tolerated)

---

[7]These tests check for joint and spine dysfunction and pain.

23

*      During an 8 hour work day, Plaintiff can sit, stand or walk 0–1 hours (as tolerated)

*      Plaintiff does not require an assistive device to ambulate even minimally during a normal work day

*      Plaintiff should never perform the following activities:

        -      pushing and pulling movement (arm and/or leg controls)
        -      climbing (stairs or ladders) and balancing
        -      bending and/or stooping movements
        -      reaching (including overhead)
        -      work with or around hazardous machinery

*      Plaintiff should rarely (1% to 5% of an 8 hour day) perform the following activities

        -      operate motor vehicles

*      Plaintiff should occasionally (6% to 33% of an 8 hour day) perform the following activities:

        -      gross manipulation (grasping, twisting and handling)
        -      fine manipulation (finger dexterity)

*      Plaintiff would miss work more than four days per month.

[R. 439.] Dr. Patel described that the medical basis for these work restrictions were Plaintiff's increasing pain and her decreasing ability to perform daily functions, decreased ability to sit/stand for any length of time, her use of narcotic medications, and decreasing ability and frequency of driving.[8] [*Id*.]

Plaintiff saw Megan Plumb, PAC ("Plumb") with LowCountry Orthopaedics on August 26, 2013, for cervical and lumbar spine pain which Plaintiff reported was moderate

_____

[8]The Commissioner contends that Dr. Patel's statement was on a "check-the-box" or "fill-in-the-blank" type of form such that it was only weak evidence. [Doc. 16 at 11–12.] However, this Court disagrees because Dr. Patel completed a section that required him to hand write his reasons for the restrictions. [R. 439.]

24

in severity and persistent in the neck with weakness/numbness, and moderate in severity and improving in the lower back. [R. 451.] Plaintiff reported that she did not have insurance at the time and was planning on getting disability in the near future; until then, Plumb opted to do medication management but plan for a right L5-1 SNRB in the future. [*Id.*] Plumb discussed her treatment plan with Dr. Patel who was in agreement.  On December 12, 2013, Plaintiff saw Plumb on follow up for her lumbar spine pain complaining of pain in her lower back and gluteal area that radiated to her back, right ankle, right calf, right foot, right thigh and right buttock and hip area down to her toes.  [R. 447.]  Plumb discussed obtaining a new MRI of the spine given Plaintiff's worsening pain, numbness and subjective weakness in the RLE.  [*Id.*] The Plan was discussed with Dr. Patel, and he agreed to the plan as outlined by Plumb.  [*Id.*]

An MRI of Plaintiff's lumbar spine obtained January 23, 2014, and read by Dr. Joshua Macatol ("Dr. Macatol") showed as follows:

* a mild diffuse disc bulge at L4-L5 with superimposed central disc protrusion and annular tear, and moderate bilateral facet hypertrophy.  These changes were noted to cause moderate to severe spinal canal stenosis with moderate to severe bilateral neural foraminal stenosis.

* Grade 1 anterolisthesis of L4-L5 measuring 3 mm; no evidence of spondylolysis.

* Mild to moderate spinal canal stenosis at L3-l4 from disc bulge and facet/ligamentum flavum hypertrophy. Mild bilateral neural foraminal stenosis.

* Postoperative laminectomy and fusion changes at L5-S1.  No significant spinal canal or neural foraminal stenosis at this level.

[R. 441.]

On March 17, 2014, Plaintiff returned to LowCountry Orthopaedics and was seen by Plumb for her lower back/L-spine and neck problems and reported pain in her right lower back, right buttock and hip, down her leg and into the top of her right foot. [R. 443.] Plaintiff had an antalgic gait upon examination, as well as decreased sensation on the leateral leg and dorsum of the foot (L5) and decreased sensation on the sole of the foot and the posterior leg (S1) and L4 normal. [R. 444.] Seated straight leg raising tests were positive on the right and negative on the left. [*Id*.] Treatment notes indicate Plaintiff "is currently in the process of being approved for disability, and is expecting insurance coverage soon. At this time, she would like to hold on any tests or injections." [*Id*.] Plumb discussed Plaintiff's recommended treatments with Dr. Patel who was in agreement with the plan to start Plaintiff on Lyrica. [R. 444–45.]

### ALJ's Weighing of Medical Opinions

In weighing Dr. Patel's opinion the ALJ explained as follows:

> In November 2012, Shailesh M. Patel, M.D., stated the claimant could not work until her followup appointment. In December 2012, Dr. Patel stated the claimant may return to work on modified duty with the following restrictions: she must be allowed to take a 15-minute break every 2 hours; she can never climb, bend, or stoop; she must be allowed to alternate positions from sitting, standing and walking; she can lift only 15 pounds bilaterally; and she can never perform overhead work. (Exhibit 3F). However, in his own treatment notes from that time, Dr. Patel noted the claimant had previously been advised to temporarily stop taking her pain medications.[9] Therefore, the record indicates that the claimant was not medicated at that time. Dr. Patel also noted the claimant had not received the epidural steroid injection he recommended due to a kidney

---

[9]While the ALJ is correct that Dr. Patel advised Plaintiff to stop taking her pain medications temporarily, the ALJ failed to acknowledge that this instruction was given due to an allergic reaction Plaintiff had to the medication she was taking. [*See* R. 414.]

stone/fever. Moreover, Dr. Patel did not document any upper extremity strength or range of motion deficits to suggest that the claimant could lift only 15 pounds and never perform overhead work. His examination findings also do not support the overly restrictive limitations on climbing, bending and stooping. While he noted the claimant demonstrated some pain to palpation of the right lower extremity, he noted the claimants bilateral lower extremity strength was normal and that the claimant exhibited only some sensory deficits of the right lower extremity and otherwise had a normal neurovascular lower extremity examination. Accordingly, Dr. Patel's opinions have been given little weight to the extent that he indicated the claimant had greater restrictions than those set forth above. (Exhibit 3F).

Additionally, in an April 2013 questionnaire, Dr. Patel stated the claimant can lift up to 10 pounds occasionally, sit for only 1 hour in an 8-hour day and stand/walk for only 1 hour in an 8-hour day.  He stated the claimant does not require an assistive walking device but that the claimant can never push or pull with the upper or lower extremities, climb ladders or stairs, balance, bend, reach or work with or around hazardous machinery.  Additionally, he stated the claimant can only rarely operate a motor vehicle and only occasionally perform gross and fine manipulations.  Dr. Patel stated the claimant will likely be absent from work more than four days per month. (Exhibit 6F).  However, Dr. Patel's opinions are not supported by his own treatment notes or the other evidence of record.  For instance, Dr. Patel routinely noted the claimant had full strength of the upper and lower extremities, lending little support for his opinion that the claimant can lift only 10 pounds and stand/walk for only 1 hour in an 8-hour day.  Moreover, while his treatment notes document some tenderness and pain with range of motion of the extremities and spine, the relatively mild clinical imaging studies and the evidence that the claimant demonstrated full strength of the extremities does not support Dr. Patel's postural limitations.  Moreover, treatment of the claimant's pain symptoms has not been so frequent as to support Dr. Patel's opinion regarding the claimant's excessive absenteeism.  Accordingly, Dr. Patel's opinions have been given little weight.

[R. 24–25.]

27

The ALJ also indicated that he gave little weight to the opinions of Dr. Eric Brittan ("Dr. Brittan") and the state agency consultants who, like Dr. Patel, found Plaintiff capable of lifting/carrying no more than 10 pounds in addition to other postural limitations based on the lack of strength deficits noted in the treatment records. [R. 25.]

### Discussion

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinions based on the factors listed in 20 C.F.R. § 404.1527(c).  In undertaking review of the ALJ's treatment of a Plaintiff's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

In this case, a review of the ALJ's decision fails to show that the ALJ reviewed the medical opinions of Plaintiff's treating physicians in accordance with the factors in 20 C.F.R. § 404.1527(c).  The Court remains mindful that its review is focused on whether the

28

ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. The Court finds that the ALJ failed to properly consider Dr. Patel's opinion, as well as the other consistent opinions of record, in accordance with the Treating Physician Rule. The misapplication of the Treating Physician Rule in this case mandates reversal of the Commissioner's decision and remand for a proper evaluation of the medical opinions contained in the record.

The ALJ's decision does not discuss the factors by which the ALJ is obligated to weigh a treating physician's opinion. Further, under the Treating Physician Rule, the ALJ is to honor as controlling a treating physician's opinion so long as it is "not inconsistent" with other substantial evidence. *See, e.g., Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1100–01 (E.D.Wis. 2001) (noting the "'not inconsistent' standard presumes the [treating physician's] opinion's prominence and requires the ALJ to search the record for inconsistent evidence in order to give the treating source's opinion less than controlling weight[,]" as opposed to an ALJ's only giving a treating source's opinion controlling weight if "the record supports it.").

Several Circuits have held that "where there is no competing evidence, the ALJ is not permitted to substitute his opinions for those of the examining doctors." *Grecol v. Halter*, 46 F. App'x 773 (6th Cir. 2002) (remanding the case for consideration of plaintiff's psychological condition where there was no evidence that plaintiff's examining doctor's opinion was incorrect); *see also Ness v. Sullivan*, 904 F.2d 432 (8th Cir. 1990) (finding that the ALJ erred by substituting his observation that plaintiff did not appear to be depressed or unhealthy during the hearing for the opinion of plaintiff's doctor that plaintiff was

29

suffering from depression); *Ramos v. Barnhart*, 60 F. App'x 334, 336 (1st Cir. 2003) (concluding that the ALJ substituted his own lay opinion for the uncontroverted medical evidence where the ALJ concluded that plaintiff did not have an impairment that was diagnosed by two examining physicians and not rejected by any examining physician).

While the Fourth Circuit has not directly stated this proposition, the Court has reversed and remanded the case where the ALJ substituted his opinion for the uncontradicted opinion of an examining physician. *See Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) (finding that the ALJ substituted expertise he did not possess in the field of orthopedic medicine for the opinion of an examining physician that was supported by the findings of a treating physician).

In this case, the ALJ not only failed to specify what evidence of record was *inconsistent* with Dr. Patel's opinion, but the ALJ disregarded the medical opinion evidence that was consistent with Dr. Patel's opinion as deserving little or no weight.  The ALJ appears to have interpreted medical exam data and made a determination regarding the consistency of the opinion of Plaintiff's treating orthopaedist with his own treatment records and other opinions of record, substituting his own expertise for that of Plaintiff's treating physician.  For example, in support of his RFC determination the ALJ focused on Dr. Patel's failure to document upper extremity strength problems and how Dr. Patel routinely noted that Plaintiff had full strength of the upper and lower extremities.  However, the ALJ ignored Plaintiff's many visits to Dr. Patel and his medical practice from February 2012 through March 2014, as summarized above, where Plaintiff sought treatment including injections and narcotic medications given for pain; and, it was documented that Plaintiff had weakness, numbness, tingling, tenderness, spasms, and worsening pain in her neck,

spine, and extremities.  Accordingly, because the ALJ selected parts of medical records but ignored other parts, it appears that the ALJ wrongfully substituted his opinion for that of Dr. Patel's opinion.

Based on applicable law indicating that an ALJ cannot substitute his opinion for the uncontested opinion of a treating physician, the undersigned recommends that this case be remanded.  On remand, the medical opinion of Dr. Patel should be explicitly weighed in light of the treatment history, including the length and extent of treatment, the area of specialization, and other factors set forth in the Treating Physician Rule, mindful of the general deference to be afforded the opinions of treating physicians, as well as in light of the general deference given examiners when weighed against the opinions of non-examining experts.  Any rejection of the medical opinions of record, which all appear to consistently agree that Plaintiff is limited to lifting/carrying no more than 10 pounds, should be based on appropriate evidence in the record and in accordance with the Treating Physician Rule and not merely the substitution of the opinion of the ALJ for that of the treating and examining medical sources.  Therefore, because the ALJ did not properly weigh Dr. Patel's medical opinion, substantial evidence does not support the ALJ's RFC determination.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly consider the medical opinion evidence in accordance with the Treating Physician Rule is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

31

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

**IT IS SO RECOMMENDED**.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 27, 2016
Greenville, South Carolina